JOHN R. PARSONS, Appellant, v. ELIZABETH A. MACKRIS, Appellee.

(*April* 8, 1959.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Joseph H. Flanzer* for Appellant.

*C. W. Berl, Jr.* (of Berl, Potter and Anderson) for Appellee.

Supreme Court of the State of Delaware, No. 56, 1958.

SOUTHERLAND, C. J.:

Plaintiff Parsons brought suit in the court below to recover for personal injuries sustained by him while changing a tire on defendant's motor vehicle. The trial court directed a verdict for defendant on the ground that plaintiff's testimony showed that he was guilty of contributory negligence as a matter of law. Plaintiff appeals, and contends that the question of contributory negligence was one for the jury.

The facts are these:

Plaintiff Parsons is an automobile mechanic. On January 31, 1957, he was under contract with the American Automobile Association to answer calls for assistance to motorists. On that day he was directed to go to defendant's house in Wilmington to change a flat tire. Upon arrival he was met by defendant's husband. Parsons' helper began to loosen the lugs on the wheel with the flat tire. Before jacking up the car Parsons went to the left side of the car to check the hand brake to make certain that it was tight. Mackris was standing on that side of the car, directly in front of the door leading to the driver's seat. Parsons told him that he (Parsons) wished to check the brake. Mackris said that the emergency brake was good and tight. Parsons said he always liked to check the brake before he jacked the car, and Mackris again said: "Well, the brake is good and tight."

Relying on Mackris' statements Parsons thereupon jacked up the left rear of the car. Mackris opened the trunk and raised the lid. Parsons started to remove the spare tire from the trunk. While he was doing so the car drifted forward and fell off the jack. The trunk lid fell and struck Parsons on the bridge of the nose. His nose was severed from his face and left hanging by the septum.

The explanation for the accident, as drawn from Parsons' own testimony, is as follows:

The automobile was a Buick. Parsons was familiar with the particular model he was working on. It will not drift if the brake is tight, because it has a brake on each rear wheel. There was no slipping or sliding of the jack, and the only reason to cause the car to go forward off the jack was the turning of the right rear wheel. Hence the brakes were not in fact tight.

Parsons had had fourteen years in his work which included the changing of tires. He was familiar with the emergency brake mechanism controlling the brakes on the rear wheels of this type of car. The brake is operated by a foot pedal which controls a cable leading to the brakes on the rear wheels. If the cable is loose, as sometimes happens, the brakes will not be tight, although the foot pedal is pushed down as far as it will go. Parsons testified:

" * * * if the cable is loose, that pedal can go down and the man could think that he had his brake good and tight, when he had this down as far as it could go. But that's not saying the wheel was tight. * * * The idea you got the pedal pushed all the way down * * * don't mean a thing."

This failure of the cable to tighten the brake, Parsons said, is an unusual circumstance, but happens frequently enough for him to "check against it"; he wouldn't think of jacking up a car without checking the brakes himself. If the emergency brake is not on or is not locked, it would be risky to jack up the car, and he wouldn't do it. If the brake was not operating properly, he would chock the wheels.

Parsons testified that from his experience he himself can determine when he pushes down the pedal whether the wheel is really locked; but the average person does not know this.

Parsons further testified that he did not insist on testing the brakes, because he relied on Mackris' assurance. He said:

"I took his word for it * * *."

He was asked:

"So you took his word for something that he didn't know anything about?"

He replied:

"That is right."

Parsons was interrogated by the trial judge as follows:

"Q. Well, you have testified a few minutes ago that the average person doesn't know when the brake is tight, locked. A. Yes.

"Q. Is that correct? A. That is right.

"Q. But you do know, because of the skill that you have in your profession. A. Do it day in and day out.

"Q. Now then, if the man told you, assuming that he is an average person, told you that his brake was tight, should you act upon that assumption? or, with your particular knowledge should you have tested it yourself? That is the question that we are trying to determine. A. Well, I should have tested it myself, but with the gentleman standing in front of me I couldn't test it. I couldn't test it because he was standing beside the car. When I told him I wanted to check the brake he says no, the brake was good and tight. So therefore you can't push a gentleman out from in front of you to test the brake."

Upon these facts the trial court held that Parsons was guilty of contributory negligence as a matter of law, or had assumed

the risk of the injury that he sustained. This is the only question before us since no question is raised of the sufficiency of the evidence to show negligence on the part of the defendant.

The general principle here applicable is that found in the *Restatement of Torts, "Negligence"*, § 300, as follows:

"When an act is negligent if done without reasonable preparation, the preparation which the actor, to avoid being negligent, is required to make for the doing of the act is that which he, as a reasonable man, should recognize as necessary to prevent the act from creating an unreasonable risk of harm to another."

Comment a. is as follows:

"The preparation which the actor must make is that which he as a reasonable man would regard as necessary. Ordinarily this would require him to make such preparation as a man of reasonable competence and skill would so regard. But if he possesses superior qualities, these may enable him to perceive existing facts which should make him realize the necessity of making preparations which a man possessing only ordinary competence and skill would not realize."

The question here concerns the application of this principle to the facts. Numerous cases are cited to us, none of which presents an identical set of facts. Thus, in *Ambort & Sons v. Bratton*, 216 *Ark.* 725, 227 *S. W.* 2d 617, an experienced tire repair man undertook to replace a wheel on a truck after he had seen that the rim was sprung, relying on the statement of the driver of the truck that there was no danger. Plaintiff admitted that he knew spring lock rims were dangerous to handle. He was held to have assumed the risk of injury.

On the other hand, in *Heldenfels v. Montgomery, Tex. Civ. App.*, 157 *S. W.* 2d 998, defendant's employee took a piston to plaintiff to have it repaired. The repair required the application of heat, and plaintiff knew that the work would be dangerous if the piston were hollow. Relying on the assurance of defend-

ant's employee that the piston was solid, he undertook the repair and was injured by an explosion. The question of contributory negligence was held for the jury.

Likewise, in *Perry v. D. J. & T. Sullivan, Inc.*, 219 *Cal.* 384, 26 *P.* 2d 485, defendant was engaged in lowering a roof on a building. Plaintiff undertook to climb a ladder which had formerly been secured to the roof, but which had become loose because of the lowering of the roof. Plaintiff relied on the assurance of the defendants' foreman that everything was all right and climbed the ladder. Because the ladder was loose plaintiff fell when he neared the top and was injured. It was argued that he should have known that the ladder was loose. It was held that he was entitled to rely on the assurance of the defendants' foreman.

In the instant case Parsons knew that it was dangerous to jack up a car without being sure that the emergency brake was tight. He thus violated an elementary precaution for his own safety in undertaking the work without testing the brake. True, he was assured that the brake was tight, but this assurance, as he himself knew, could not be relied on. It is this latter fact that differentiates the case from the decisions cited by plaintiff, in which the injured parties had no reason to believe that the assurances of safety were worthless. The instant case is analogous to the *Ambort* case, in which the repair man had from experience as much or more knowledge of the danger than the driver of the truck.

This conclusion is inevitable, we think, in the light of the plaintiff's own testimony. Asked pointedly by the trial judge whether he should act upon an assurance by the average person that his brake was tight, or whether with his particular knowledge he should have tested it himself, he replied that he should have tested it himself.

This is an admission that he knew that the assurance of defendant's husband was worthless. The case thus is reduced to

the fact that Parsons, knowing that it was dangerous to jack up a car without knowing that the brake was tight, failed to take any reasonable precaution for his own safety.

It is said that he could not test the brake because defendant's husband stood in his way by the door of the driver's seat. Parsons made no effort to explain why he wanted to test the brake. It is certainly doubtful whether he would have been actively prevented from testing the brake if he had explained the necessity for the test. But the sufficient answer to this contention is that he could have chocked the wheel. He had brought chocks with him.

■ Plaintiff must be held to a standard of conduct appropriate to his specialized knowledge. See Comment a. of the *Restatement, supra.*

■ We are of opinion that upon the undisputed facts plaintiff was guilty of contributory negligence as a matter of law.

The judgment of the Superior Court is affirmed.