**Isias ROSAS, Petitioner,**

v.

**BUDDIES FOOD STORE, Respondent.**

**No. B–4730.**

Supreme Court of Texas.

Jan. 8, 1975.

Rehearing Denied March 5, 1975.

Bean, Francis, Ford, Francis & Wills, Gerald W. Livingston, Charles R. Ford, Robert Bean, Dallas, for petitioner.

Crumley, Murphy & Shrull, James P. Wagner and Roswald E. Shrull, Fort Worth, for respondent.

STEAKLEY, Justice.

On a rainy afternoon, Isias Rosas entered Buddies Food Store, slipped on a wet floor and fell. Rosas sued Buddies to recover for the personal injuries he sus-

tained. Buddies' motion for a Summary Judgment was granted by the trial court and this has been affirmed by the Court of Civil Appeals. 509 S.W.2d 451. We reverse and remand for a trial on the merits.

Summary judgment was based on the pleadings of the parties and their depositions. Rosas alleged that he was a business invitee, that the wet floor constituted a danger, that Buddies knew of the danger, that Buddies had a duty to exercise reasonable care to protect its customers, that Buddies breached its duty and that the breach caused his injuries. He testified in his deposition that it had been raining on the day of the accident, that due to the rain he was not at work as a tractor driver for a local farmer, that he drove to Buddies Food Store for groceries late in the afternoon, that it was raining at the time that he parked his car and walked into Buddies, that the sidewalks were wet, that he walked through an automatic door with a mat directly inside the entrance, that this was not his first time in the store, that he slipped and fell on the wet floor just beyond the mat, that he didn't see water on the floor until after he fell and that he suffered injuries thereby. Buddies' store manager, who was present at the time of the accident, deposed that it had been raining since he had started his workshift, that prior to Rosas' fall he and other employees had been mopping the floor around the entrance door in an attempt to hold down water accumulation, that they could not, however, entirely prevent a wet floor, that he was about 15 feet from Rosas when he saw him fall, that from where he stood he saw water on the floor, that he could detect no hesitancy or caution by Rosas but rather thought Rosas entered the store "naturally as you would anywhere," that the store had a normal procedure for such incidents as Rosas' fall, that there were better methods of insuring a dry floor than just mopping but the method in use was the generally accepted one and that there had been similar falls previously.

The Court of Civil Appeals in affirming the take-nothing summary judgment held that the wet floor did not amount to a dangerous condition or one involving an unreasonable risk or harm, but was, in fact, a normal result of the rain and that "under all of the facts presented by this appeal the danger, if any, was open and obvious and there was no duty."

Negligence is no more than breach of a legal duty; the tort becomes actionable when the breach causes injury. McCall v. Marshall, 398 S.W.2d 106 (Tex. 1965); Denison Light & Power Co. v. Patton, 105 Tex. 621, 154 S.W. 540 (1913). More in point, the duties owed by a landowner depend upon the role of the person injured on his premises. The duty of reasonable care is owed to an invitee. Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60 (1953); Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1950). An invitee has been described as one who enters on another's land with the owner's knowledge and for the mutual benefit of both. Renfro Drug Co. v. Lewis, *supra*. Restatement (Second) of Torts § 332 (1965). It is clear from the summary judgment record here that Rosas occupied the status of an invitee.

A further explication of the duty of reasonable care owed by the landowner to an invitee is found in the Restatement (Second) of Torts § 343 (1965), adopted by this Court in Adam Dante Corp. v. Sharpe, 483 S.W.2d 452, 454–455 (Tex.1972):

§ 343. Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

In *Adam Dante,* we wrote of the basic issues in a conventional occupier-invitee case, and we there pointed out that a defendant-movant in a summary judgment proceeding had the burden of proving as a matter of law the opposite of the burden upon a plaintiff:

> . . . Under such issues, it would be Mrs. Sharpe's burden at trial to prove the existence and violation of a legal duty owed to her by Adam Dante. Coleman v. Hudson Gas and Oil Corp., 455 S.W.2d 701 (Tex.1970). That includes her burden to prove that she did not possess actual knowledge of the danger, that she did not fully appreciate the nature and extent of the danger, and that the danger complained of was not so open and obvious as to charge her, as a matter of law, with such knowledge and appreciation. Since this is a summary judgment proceeding, however, Adam Dante had to prove as a matter of law the opposite of what would ordinarily be the plaintiff's burden to prove or it had to prevail as a matter of law on one or more of its defenses.

■ Here, Buddies' answer consisted of a general denial; no affirmative defenses were alleged. It was under the burden on summary judgment of disproving as a matter of law one or more of the elements of negligence. Guidry v. Neches Butane Products Co., 476 S.W.2d 666 (Tex.1972).

■ We first consider the holding of the Court of Civil Appeals that the wet floor created no danger and hence Buddies was under no duty. Since the landowner has a duty to discover, warn of and eliminate only those conditions presenting an unreasonable risk of harm, i. e., a danger, the finding that there was no danger would absolve Buddies of any duty. Seideneck v. Cal Bayreuther Associates, 451 S. W.2d 752 (Tex.1970).

■ In support of the no-danger holding the Court of Civil Appeals relied on Camp v. J. H. Kirkpatrick Co., 250 S.W.2d 413 (Tex.Civ.App.1952, writ ref'd n. r. e.). There, an office building tenant slipped on the floor outside the entranceway on a rainy day and sued the landlord-owner for damages. In affirming the trial court's instructed verdict for the owner, the Court stated:

> . . . Rather than proof of a danger, this is no more than proof of a normal and natural condition during a moderate rain. There is no duty on a proprietor to stay the elements, nor to continuously mop during a shower.

After stating that the facts in the case at bar parallel those in *Camp,* the Court of Civil Appeals concluded that the wet floor was merely a normal condition of life on a rainy day. 509 S.W.2d 451, 452–453.

■ We do not agree. Whether a condition constitutes a danger is a function of reasonableness. That is, if the ordinarily prudent man could foresee that harm was a likely result of a condition, then it is a danger. 2 F. Harper & F. James, The Law of Torts § 27.1 at 1431 (1956); W. Prosser, The Law of Torts § 61, at 385 (4th ed. 1971). In Seideneck v. Cal Bayreuther Associates, *supra,* this Court stated:

> As might be expected with a matter involving the "reasonable man" concept, there seems to be no definitive, objective test which may be applied to determine whether a condition presents an unreasonable risk of harm. Obviously, evidence of other falls attributable to the same condition, or evidence of defectiveness of the rug, floor, or other condition causing the fall would be probative, although not conclusive, on the question.

■ There are material distinctions between the present facts and those in *Camp.* For example, it was stated in *Camp* that there was no proof of prior ac-

cidents due to the wet entranceway floor. Buddies' store manager, however, not only testified that in the past customers had fallen on a wet floor adjacent to the entrance but also that there was a standard procedure for handling such incidents. Further, the plaintiff-invitee in *Camp* conceded that due to the construction of the entranceway floor there was natural drainage and no water accumulation. Conversely, Buddies' store manager admitted that he was continually attempting to hold water accumulation in check, that mopping could only partially solve the problem and that the real solution was to sweep the floor, a process not in use at the time of the accident.

Taking the testimony as a whole, we find Camp v. J. H. Kirkpatrick, *supra,* factually distinguishable and we hold that reasonable minds could differ as to the dangerous character of the wet floor. Adam Dante Corp. v. Sharpe, *supra.* The danger was not open and obvious so as to relieve Buddies of any duty or to charge Rosas with knowledge and full appreciation of the nature and extent of the danger. See Massman-Johnson v. Gundolf, 484 S. W.2d 555 (Tex.1972).

For these reasons, all members of the Court agree that the judgment of the Court of Civil Appeals is to be reversed and the cause remanded for trial.

The writer, joined by Justices Daniel and Johnson would also declare that for this trial, and henceforth in the trial of all actions based on negligence, *volenti non fit injuria*—he who consents cannot receive an injury—or, as generally known, voluntary assumption of risk will no longer be treated as an issue in actions based on negligence; but that the reasonableness of an actor's conduct in confronting a risk will be determined under principles of contributory negligence.

I express this view for a number of reasons. Foremost is my conviction, for the reasons I shall briefly state, that the *volenti* defense should be abolished. Further, there is the likelihood, if not the certainty, that the defense will be asserted upon trial of this case on the ordered remand. And since the Court requested the parties to file postsubmission briefs upon the question, excellent briefs are before us. I would therefore confront the problem here and now.

We have written at length on the whole genre of *volenti* defenses. See Massman-Johnson v. Gundolf, *supra*; Adam Dante v. Sharpe, *supra*; Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.1963); Robt. E. McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954); Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374 (1948). Suffice it to say that in these cases it has been held that a landowner-defendant owes no duty as to conditions which are open and obvious; and that an occupier's proof of *volenti* negates the presence of duty. See the most recent extended discussion in Adam Dante v. Sharpe, *supra.* So it is that an invitee who is held to be charged with knowledge of a defect, i. e., one which is open and obvious, and who proceeds to encounter it, has voluntarily assumed the risk of any injuries incurred thereby, and for this reason is precluded from any recovery.

The heart of the matter is that the *volenti* doctrines represent an attempt to impose the analysis of subjective intent on a behavioral tort rather than resolve liability or not on the basis of fault under traditional concepts of negligence. Put more simply, negligence is a measure of a party's conduct and the test is generally objective, whereas *volenti* is a subjective inquiry into a party's actual, conscious knowledge. The standards are different. Massman-Johnson v. Gundolf, *supra*; Halepeska v. Callihan Interests, Inc., *supra.* And we have recognized that the success of the *volenti* defense in Texas has turned on whether or not it is established that the plaintiff knew he was exposing himself to

the danger which caused him harm. Rabb v. Coleman, 469 S.W.2d 384 (Tex.1971). This is but to say that he intended to encounter the risk. Even so, it was the view of this writer in his dissent in Rabb v. Coleman that the writing of the majority did not require that the injured party know and appreciate the *particular* danger to which it was held he had given his consent.

It cannot be doubted that voluntary assumption of risk has generated so many elusive distinctions that precedent is often of little help. Colson v. Rule, 15 Wis.2d 387, 113 N.W.2d 21 (1962); Edgar, Voluntary Assumption of Risk in Texas Revisited —A Plea for its Abolition Sis.L.J. 849 (1972); Greenhill, Assumption of Risk, 16 Baylor L.Rev. 111 (1964); 65A C.J.S. Negligence § 117 (1966). The doctrine is criticized in 2 F. Harper & F. James, The Law of Torts § 21.8, at 1191 (1956), as "duplicative of other more widely understood concepts," as standing for several distinct notions which are not the same and as overlapping other concepts or defenses. The authors conclude that the doctrine should be abolished except in cases of express assumption of risk. See, 1 Blashfield, Automobile Law and Practice § 64.1, at 536–537 (1965); James, Assumption of Risk, 61 Yale L.J. 141, at 168–169 (1952); cf. W. Prosser, Law of Torts § 68, at 456–457 (4th ed. 1971).

Furthermore, since Texas has embraced comparative negligence by legislative enactment, the intent to apportion negligence rather than completely bar recovery is persuasive to an abandonment of the *volenti* defenses. This has followed in the wake of comparative negligence in many jurisdictions. See McConville v. State Farm Mutual Ins. Co., 15 Wis.2d 374, 113 N.W. 2d 14 (1962); DuBose v. Matson Nav. Co., 403 F.2d 875 (9th Cir. 1968); Bulatao v. Kauai Motors, Ltd., 49 Haw. 1, 406 P.2d 887 (1965); Fawcett v. Irby, 92 Idaho 48, 436 P.2d 714 (1968); Springrose v. Willmore, 292 Minn. 23, 192 N.W.2d 826 (1971); Bolduc v. Crain, 104 N.H. 163, 181 A.2d 641 (1962); McGrath v. American Cyanamid Co., 41 N.J. 272, 196 A.2d 238 (1963); Meistrich v. Casino Arena Attractions, Inc., 31 N.J. 44, 155 A.2d 90 (1959); Ritter v. Beals, 225 Or. 504, 358 P.2d 1080 (1961); Siragusa v. The Swedish Hospital, 60 Wash.2d 310, 373 P.2d 767 (1962); Gilson v. Drees Bros., 19 Wis.2d 252, 120 N.W.2d 63 (1963); Colson v. Rule, *supra.*

Other jurisdictions appear to have abolished assumption of the risk as a defensive theory apart from comparative negligence considerations. See Hale v. O'Neill, 492 P.2d 101 (Alaska 1971); Leavitt v. Gillaspie, 443 P.2d 61 (Alaska 1968); Frelik v. Homeopathic Hospital Assn. of Delaware, 51 Del. 568, 1 Storey 568, 150 A.2d 17 (1959); Rosenau v. City of Estherville, 199 N.W.2d 125 (Iowa 1972); Parker v. Redden, 421 S.W.2d 586 (Ky.App.1967); Baltimore County v. State, 232 Md. 350, 193 A.2d 30 (1963); McWilliams v. Parham, 269 N.C. 162, 152 S.E.2d 117 (1967); Williamson v. Smith, 83 N.M. 336, 491 P. 2d 1147 (1971); Felgner v. Anderson, 375 Mich. 23, 133 N.W.2d 136 (1965).

The desirable simplicity in thus addressing the true issues between the parties is apparent from decisions by our courts where this was done. See Blanks v. Southland Hotel, 149 Tex. 139, 229 S.W.2d 357 (1950); Lang v. Henderson, 147 Tex. 353, 215 S.W.2d 585 (1948); Walgreen-Texas Co. v. Shivers, 137 Tex. 493, 154 S. W.2d 625 (1941); McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442 (1941); Gulf C. & S. F. Ry. Co. v. Gascamp, 69 Tex. 545, 7 S.W. 227 (1888); Texas & N. O. Ry. Co. v. Wood, 166 S. W.2d 141 (Tex.Civ.App.1942, no writ). Unaffected would be the current status of the defense where the risk is expressly assumed, as well as in strict liability cases; the reasons I have expressed for abolishing the defense in negligence cases do not obtain as to these.

Judgment of the Court of Civil Appeals is reversed, and the cause is remanded for trial.

Concurring opinion by WALKER, J., in which GREENHILL, C. J., and POPE, McGEE and DENTON, JJ., join.

WALKER, Justice (concurring).

While I do not disagree with all that is said by Mr. Justice Steakley concerning the doctrine of volenti non fit injuria, it is my opinion that we should consider and deal with the doctrine in the context of a case involving that defense. It is not involved in the present case. Assumption of the risk is not even pleaded as required by Rule 93, Texas Rules of Civil Procedure. I concur in the judgment of reversal and remand, because the record does not establish conclusively that the condition of the floor was so open and obvious that petitioner should be charged as a matter of law with knowledge and appreciation of the danger.

GREENHILL, C. J., and POPE, McGEE and DENTON, JJ., join in this concurring opinion.