Elijah DuBOSE, Appellant,

v.

MATSON NAVIGATION COMPANY,
a corporation, Appellee.

No. 22074.

United States Court of Appeals
Ninth Circuit.

Nov. 12, 1968.

Kenneth W. Rosenthal (argued) of Darwin, Rosenthal & Leff, San Francisco, Cal., for appellant.

E. Judge Elderkin (argued) of Brobeck, Phleger & Harrison, San Francisco, Cal., for appellee.

Before BARNES and DUNIWAY, Circuit Judges, and *McNICHOLS, District Judge.

BARNES, Circuit Judge.

This is an appeal of an admiralty case arising under 46 U.S.C. § 688. Jurisdiction here rests on 28 U.S.C. § 1291.

The facts are not in dispute nor is the liability of the defendant. The two issues in this appeal, both of which relate to the legal consequences which attach to the facts are (1) Did the trial court err in concluding that appellant was con-

tributorily negligent?, and (2) Did the trial court err in attributing 75% of the cause of the injury to appellant's negligence? As to the latter issue, the appellant claims that the court's conclusion was clearly erroneous and unsupported by the evidence.

Appellant, a forty-four year old seaman, signed on the SS Matsonia as a scullion from January 28, 1961 to April 5, 1961. During this period of time, Du-Bose polished silverware in the ship's dishwashing room. He was assigned to a sink where he performed his duties. Some four feet behind the sink at which appellant worked there was a counter on which were located hand-carried dishracks. During the course of the serving of meals aboard the ship, three or four men would carry dishes to and from the serving area and would utilize the portable dishracks. These dish-runners would pass back and forth behind appellant, transporting the dishes back and forth. The dishracks were 6¼″ by 14″ by 19″ and the bottom of the rack, when carried by a dish-runner with his arms extended downward, was adjacent to that area of the human leg just below the knee. Because of the close proximity of the sink at which appellant worked to the counter behind, approximately four feet, the dish-runners passing back and forth behind appellant bumped the backs of his legs many times with the dishracks. Appellant complained about his legs a number of times to the dish-runners. But he never made a complaint to the ship's officers because the bumps were like "hand bump[s] * * * you just ignore it," and further because " * * * they had to be passing by. There was no other way for them to get by to do their work." After having worked on the ship for a period of time, appellant noticed that his right leg was feeling numb and on the back thereof he detected a knot. Shortly after making this discovery, appellant mentioned his leg condition to the ship's doctor while visiting him for another, unrelated purpose. The doctor

* Hon. RAY McNICHOLS, United States District Judge, Boise, Idaho.

informed him that he had a cyst on his leg and that when he went to the hospital for some other treatment the cyst should be shown to the doctors there. On March 13, 1961, while still working on the ship, appellant went to the Public Health Service Hospital in San Francisco. No action was taken by hospital doctors concerning his leg at that time, but he was instructed to return on April 10, 1961. He was returned to the ship in fit condition. Pursuant to a union rule, DuBose's employment on the SS Matsonia terminated on April 5, 1961. On his return visit to the hospital, appellant was instructed to report to the San Francisco Marine Hospital on May 1, 1961, for leg surgery. The cyst was removed at that time and appellant's leg was placed in a cast.[1]

Following this surgery, appellant contracted a "drop" foot, the inability to raise his foot due to the retraction of a nerve during the operation. Appellant was placed in a metal leg brace which he wore continuously until September 15, 1961. He returned to work on another ship on December 8, 1961, but wore the brace *intermittently* until August 1966. DuBose has worked since December 1961, and has been able to perform his duties *without meaningful impairment.* He still suffers from numbness, a stinging sensation in his leg, and from the inability to sleep on his right side because of pain in his ankle.

The district court found that the repetitive bumping of appellant's leg by the dish-runners was "to some degree a proximate cause" of his injury; that appellant never complained of the bumpings to the ship's officers or medical staff nor to his union delegate; and that he was not required to stay aboard the vessel and could have terminated his employment at any time the vessel reached port. The court found that although the ship's officers and/or agents were unaware of appellant's plight, they were negligent in failing to discover this fact and in failing to re-route the dish-runners, and that this

negligence made the ship unseaworthy. However, the court found that appellant's inaction in failing to report his injuries and in failing to terminate his employment on the vessel was contributory negligence on his part to the extent of 75% of the cause of the injury. The court found appellant's damages to be $14,700 and reduced that figure by 75%, entering judgment for $3,675.

■ Appellant's principal contention is that the district court's finding "of contributory negligence * * * was improper and tantamount to a finding of assumption of risk by appellant," and that assumption of risk has no place in maritime law, citing Socony Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262 83 L.Ed. 265 (1939). We agree. The application of the assumption of risk doctrine to *bar* recovery in admiralty *was* disavowed in *Socony,* but the Court went on to say,

"Any rule of assumption of risk in admiralty, whatever its scope, must be applied in conjunction with the established admiralty doctrine of comparative negligence and in harmony with it. Under that doctrine contributory negligence, however gross, is not a bar to recovery but only mitigates damages." 305 U.S. at 431, 59 S.Ct. at 266.

The Court concluded:

"We think that the consistent development of the maritime law in conformity to its traditional policy of affording adequate protection to seamen through an exaction of a high degree of responsibility of owners for the seaworthiness of vessels and the safety of their appliances will be best served by applying the rule of comparative negligence, *rather than that of assumption of risk,* to the seaman who makes use of a defective appliance knowing that a safe one is available." (Emphasis added. Id. at 432, 59 S.Ct. at 267).

■ Here the court did not find that appellant assumed the risk; it found appellant to have been contributorily

---

1. DuBose's affliction was diagnosed as popliteal ganglion, a cystic tumor connect-   ed to the tendon sheath on the back of his knee joint.

negligent. Mitigation of damages was the proper application of that finding to the amount recoverable. Socony Vacuum Oil Co. v. Smith, supra; Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 408–409, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Palermo v. Luckenbach Steamship Co., 355 U.S. 20, 78 S.Ct. 1, 2 L.Ed.2d 3 (1957); Movible Offshore Co. v. Ousley, 346 F.2d 870 (5th Cir. 1965); Flowers v. Savannah Mach. & Foundry Co., 310 F.2d 135 (5th Cir. 1962); Bryant v. Partenreederei-Ernest Russ, 352 F.2d 614 (4th Cir. 1965); Nygren v. American Boat Cartage, Inc., 290 F.2d 547 (2d Cir. 1961); American President Lines, Ltd. v. Welch, 377 F.2d 501 (9th Cir. 1967). We reject appellant's contention that we must decide this case on the rationale that the court below in fact found assumption of risk, and did so improperly. We therefore proceed to the determination of whether the trial court erred in concluding appellant was contributorily negligent. In so doing we are mindful that in making such a determination we may not set aside the judgment below unless the findings of that court are clearly erroneous—i. e., unless we are convinced a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364 at 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954).

■■■ The thrust of appellant's argument is that because he had but one assigned place at which he was to do his work, he cannot be held to have been contributorily negligent. This, for the reason that the concept of contributory negligence becomes operative only when alternative courses of action are available to the injured party and he chooses the unreasonable course, citing Smith v. United States, 336 F.2d 165 (4th Cir. 1964); Misurella v. Isthmian Lines, Inc., 215 F.Supp. 857 (S.D.N.Y.1963), aff'd, 328 F.2d 40 (2d Cir. 1964); Dixon v. Serodino, Inc., 331 F.2d 668 (6th Cir. 1964); Superior Oil Co. v. Trahan, 322 F.2d 234 (5th Cir. 1963); and Asaro v. Parisi, 297 F.2d 859 (1st Cir. 1962).

"Had an alternative safe route been available to Smith, his deliberate choice of a course known to be unsafe could possibly have indicated contributory fault, but mere knowledge of the unseaworthy condition and use of the ladder in the absence of a showing that there was an alternative is not contributory negligence." Smith v. United States, supra, at 168.

We accept this as a proper statement of the doctrine of contributory negligence as applied to the facts of this case. See Prosser, The Law of Torts, 3d ed., 1964 § 67; 2 Harper & James, The Law of Torts, 1956 § 22.2, p. 1201. The district court found that appellant had no course of action available, other than that endured by him, but held that appellant was negligent in not setting in motion circumstances which would bring about a change of conditions, namely, informing his superiors of the bumps he had been receiving so that they could change the course of the dish-runners. Of course, whether appellant had a duty to so inform his superiors depends upon whether it can be said, as a matter of law, that his continuing to work under the aforesaid conditions created "an *unreasonable* risk of injury to himself." Kulukundis v. Strand, 202 F.2d 708, 711 (9 Cir. 1953). (Emphasis in original.)

The crux of appellant's testimony was that the bumps he received on his legs were like "hand bump[s] * * * you just ignore it." The mild nature of the bumps is further supported by the medical testimony adduced at the trial, which reflected that it was not solely the repetitive bumpings which caused the formation of the cyst but the latter was due in part to the gradual degeneration of the sheath around the tendon, which (from the size of the cyst removed from appellant's leg)[2] was diagnosed as having been in existence for more than a year

2. 5 cm. or approximately two inches.

before the operation.[3] As the trial court concluded, "[T]he repetitive bumping was at least to some degree a proximate cause. I am not at all positive." The trial court was most complimentary of appellant's honesty and candor on the witness stand. We are therefore given no reason not to accept, as did the district court, appellant's testimony that he was unaware of the injury that was befalling him. But neither was the employer aware of the condition.

■ The trial judge was most conscientious and concerned with the issue before him. We find support in the record for his conclusion that appellant was contributorily negligent by not bringing to the attention of his superiors the conditions under which he was working.

■ We are bound by this determination made by the trial court of this factual matter. When a maritime worker continues to work under conditions known to be dangerous, he may be found to be contributorily negligent. Misurella v. Isthmian Lines, Inc., supra. The same rule should apply if he is the only one who could know whether or not a condition caused injury, or was dangerous.

We draw a distinction between the facts of this case, and those in Ballwanz v. Isthmian Lines, Inc., 319 F.2d 457, 462 (4th Cir. 1963), and Adams v. United States, 393 F.2d 903 (9th Cir. 1968).

In the former, the injured plaintiff had no opportunity to know of the dangerous conditions to which he was being exposed and, hence, had no duty to object. The injury occurred three hours after the unsafe equipment was first used. Similarly, in *Adams,* no extended period of injuries was involved.

■ The court's finding that the appellant was guilty of contributory negligence barring 75% of his recovery is a matter entirely within the discretion of the trial court. No abuse of that discretion is shown and we affirm.

3. And for more than seven months before his employment on the "Matsonia."