Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★  ★ ★ ★

## MEMORANDUM OPINION

No. 04-08-00660-CV

**WEEKS** Marine, Inc.,
Appellant

v.

Maximino **GARZA**,
Appellee

From the 381st Judicial District Court, Starr County, Texas
Trial Court No. DC-06-195
Honorable Jose Luis Garza, Judge Presiding

Opinion by:     Steven C. Hilbig, Justice

Sitting:        Phylis J. Speedlin, Justice
                Rebecca Simmons, Justice
                Steven C. Hilbig, Justice

Delivered and Filed: April 21, 2010

AFFIRMED

Weeks Marine, Inc. appeals the judgment rendered in Maximino Garza's favor under the Jones Act and for claims related to a seaman's right to maintenance and cure. The judgment awarded Garza $1,121,000.00 in tort damages, $2,500,000.00 as compensation for failure to pay maintenance and cure, $15,000.00 in maintenance, $73,500.00 in attorney's fees, and $6,110.36 in experts' fees. We affirm the judgment.

## BACKGROUND

Garza was injured while working as crew member on vessels owned and operated by Weeks. The parties stipulated Weeks was a Jones Act employer and the owner and operator of the dredge called the TOM JAMES and a barge called the Skadgit. The parties also stipulated that Garza sustained an injury to his neck and head on February 15, 2006, while on the Skadgit, but the extent of the injuries were disputed. Garza normally worked as an engineer on the TOM JAMES, but on the day of the accident he was being trained by his supervisor on how to adjust a friction bar on the Skadgit. During training, Garza's supervisor told him to go get some tools. As Garza left to retrieve the tools, his supervisor dropped the friction lever, which then struck Garza's hard hat.

Garza went to the doctor the next day, underwent an MRI, and was diagnosed with a contused cranium, mild concussion, and cervical sprain. Garza was released for work with no restrictions. Weeks paid for the medical visit and exams. Garza returned to work for a short period of time, but had daily complaints of head and neck pain. Garza decided he could no longer work with the pain and sought permission from his supervisor to seek medical attention. Garza left work and testified his supervisor told him to go and take care of himself. Shortly thereafter, Garza filed suit against Weeks alleging four separate claims: a negligence claim under the Jones Act; a seaman's claim for maintenance and cure; a claim the vessel was unseaworthy; and a claim for compensatory damages for Weeks's unreasonable failure to pay maintenance and cure.

The jury found in Garza's favor on all claims except the seaworthiness claim. The jury also found Garza was acting under specific orders at the time of the accident and was twenty percent at fault for the accident. The damages awarded pursuant to the negligence claim included medical expenses, loss of income, impairment of earning capacity, physical pain, and mental anguish. The

jury also awarded Garza his maintenance and cure under his seaman's claim. Finally, the jury awarded Garza damages for the physical pain and mental anguish that resulted from Weeks's unreasonable failure to pay maintenance and cure. Garza waived the cure award because it represented the same element of damage as the medical expenses awarded under the negligence claim. The trial court rendered judgment on the maintenance award and all elements of damages under the negligence and unreasonable failure to pay maintenance and cure claims. Based on the jury's finding that Garza was acting in response to a specific order at the time of the accident, the trial court did not reduce Garza's damage award due to the twenty percent of fault attributed to him.

Weeks contends: (1) the trial court erred in rendering judgment for tort damages for all of the damages awarded because it constitutes a double recovery of the same damage elements; (2) the evidence is legally insufficient to support the jury's finding that Weeks acted unreasonably in denying the maintenance and cure claim; (3) the trial court erred in submitting an instruction on aggravation or activation of injury; (4) the evidence is legally insufficient to support the finding that Garza was acting under specific orders at the time of the accident; (5) Garza's entire award should be reduced by twenty percent and (6) the award of attorney's fees and costs should be deleted from the judgment.

### DOUBLE RECOVERY

Weeks argues the judgment awarded Garza a double recovery for the same elements of damage under different causes. Under the "one satisfaction rule," Texas prohibits this type of recovery if it constitutes a "double recovery." *See Crown Life Ins, Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000); *Baribeau v. Gustafson*, 107 S.W.3d 52, 60 (Tex. App.—San Antonio 2003, pet. denied), *cert. denied*, 543 U.S. 871 (2004). A double recovery occurs when a plaintiff obtains more

than one recovery for the same injury or loss. *Waite Hill Servs, Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991). A plaintiff is entitled to only one recovery for any damages suffered because of one particular injury. *Utts v. Short*, 81 S.W.3d 822, 831 (Tex. 2002); *Casteel*, 22 S.W.3d at 390; *Baribeau*, 107 S.W.3d at 60. However, when a plaintiff pleads multiple theories of liability, a judgment for damages on more than one theory is proper if the theories depend on separate and distinct injuries and there are separate and distinct damage findings made as to each theory. *Beaumont v. Basham*, 205 S.W.3d 608, 614 -615 (Tex. App.—Waco 2006, pet. denied); *see Baribeau*, 107 S.W.3d at 60 (citing *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 367 (Tex. 1987)).

Weeks claims the jury's award of medical expenses under the negligence award is the same element of damage as the cure award. Although Weeks is correct that the elements of damage are the same, there is no double recovery because the trial court's judgment awards damages to Garza only for his medical expenses and does not award him damages for cure.

Weeks also asserts the award of lost wages under the negligence claim and the maintenance award under the seaman's claim is a double recovery of the same damages. Weeks is incorrect because maintenance is not duplicative of lost wages. *Morel v. Sabine Towing & Transp. Co.*, 669 F.2d 345, 346 (5th Cir. 1982). "Maintenance is the equivalent of the food and lodging to which a seaman is entitled while at sea . . . . Maintenance is neither a substitute for wages nor is it to be considered in lieu of a seaman's wages, in whole or in part." *Id*. Maintenance can be awarded in addition to past and future wages. *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 378 (5th Cir. 1989).

Next, Weeks contends question 13, which asked the jury to award mental anguish and physical pain damages that resulted from Weeks's failure to pay maintenance and cure, should not have been submitted to the jury because it included the same damage elements as submitted in question 7. Question 7 asked the jury to award physical pain and mental anguish damages for Garza's injuries sustained as a result of the accident on February 15, 2006. Although both questions submit physical pain and mental anguish elements of damage, each is based on a different theory of liability. *See Beaumont*, 205 S.W.3d at 614 -615; *Baribeau*, 107 S.W.3d at 60-61 (citing *Birchfield*, 747 S.W.2d at 367). Question 7 relates to a seaman's claim under the Jones Act for an injury in the course of his employment. *See Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995) (citing 46 U.S.C. App. § 688(a)). Question 13 is based on a seaman's right to compensatory damages when the ship-owner is responsible for the seaman's maintenance and cure, but acts unreasonably in failing to pay the claim. *See Morales v. Garijak, Inc*., 829 F.2d 1355, 1358 (5th Cir. 1987). Garza pled both a Jones Act negligence claim and a claim based on Weeks's unreasonable failure to pay maintenance and cure, and question 7 and 13 inquired about damages for each of the two separate and distinct causes of action. The trial court did not err in submitting both questions.

Similarly, Weeks argues Garza is not entitled to recover both the mental anguish and physical pain and suffering awards found in response to questions 7 and 13 because it provides a double recovery for the same injury. To the contrary, the charge submitted two different damage questions for two different causes of action. Question 7 specifically asked the jury to compensate Garza for his injuries that resulted from the accident on February 15, 2006. Question 13 asked the jury to compensate Garza for his injuries that resulted from Weeks's failure to pay maintenance and cure. Garza pled and submitted different causes of action, and obtained separate jury findings on damages

under each theory. The theories of liability depend on separate and distinct injuries. *See Morales*, 829 F.2d at 1358. The award of both the negligence damages and the damages that resulted from the unreasonable failure to provide maintenance and cure is not a double recovery.[1]

## UNREASONABLE DENIAL OF MAINTENANCE AND CURE CLAIM

Weeks's next complaints relate to Garza's claim that he was unreasonably denied maintenance and cure. Garza requested medical treatment after the accident on February 15, 2006. Weeks authorized initial medical treatment for Garza, but after one physician released him to return to work, Weeks denied all additional requests for medical treatment and his seaman's maintenance and cure. Maintenance is a living allowance paid as long as the seaman is not hospitalized and has not reached the point of maximum cure. *Maritime Overseas Corp. v. Thomas*, 681 S.W.2d 160, 161 (Tex. App.— Houston [14th Dist.] 1984, no writ). Cure pays therapeutic, medical, and hospital expenses not otherwise provided to the seaman until the point of "maximum cure." *Id*. Maximum cure is reached when it appears probable that further treatment will not better the seaman's condition. *Id*. at 162-62. Garza filed suit and sought damages claiming Weeks unreasonably denied his claim for maintenance and cure. The jury found in Garza's favor.

The right of a seaman to receive maintenance and cure benefits is well-established, and "[a]dmiralty courts have been liberal in interpreting this duty 'for the benefit and protection of

---

[1] In its reply brief, Weeks obliquely states "[t]he real point is: there is no evidence Garza sustained a separate and distinct injury because Weeks did not pay, or did not timely pay, maintenance and cure . . . ." However, Weeks makes this argument in relation to the complaint that Garza received a double recovery for the same injury. Weeks did not raise or brief a complaint that there is legally insufficient evidence to support the jury's damage award under question 13. Weeks waived any issue on the sufficiency of the evidence to support the jury's finding that Garza suffered injuries as a result of Weeks's failure to pay maintenance and cure. TEX. R. APP. P. 38.1(f), (I); *Eastin v. Dial*, 288 S.W.3d 491, 501 (Tex. App.—San Antonio 2009, pet. denied); *Gardner v. Gardner*, 229 S.W.3d 747, 756 (Tex. App.—San Antonio 2007, no pet.).

seamen who are its wards.'" *Vaughan v. Atkinson*, 369 U.S. 527, 531-32 (1962)(quoting *Calmer S.S. Corp. v. Taylor*, 303 U.S. 525, 529). The United States Supreme Court holds a shipowner's liability for maintenance and cure should not be defeated by restrictive distinctions nor narrowly confined. *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 735-36 (1943). When there are ambiguities or doubts regarding liability, they are resolved in favor of the seaman. *See Vaughan*, 369 U.S. at 532.

A ship-owner is not required to immediately commence payments upon receiving a claim; he is entitled to investigate and require corroboration of the claim. *Morales*, 829 F.2d at 1358. However, if after an investigation, the ship-owner unreasonably denies the claim when the seaman is due maintenance and cure, the owner becomes liable not only for the maintenance and cure payments, but also for compensatory damages. *Id.*; *Maritime Overseas Corp. v. Waiters*, 923 S.W.2d 36, 40-42 (Tex. App.—Houston [1st Dist.] 1995), *modified on other grounds and aff'd*, 917 S.W.2d 17 (Tex. 1996). Compensatory damages encompass injuries caused by the denial of payment, such as the aggravation of the seaman's condition, and are determined by the usual principles applied in tort cases to measure compensatory damages. *Morales*, 829 F.2d at 1358; *Smith v. Delaware Bay Launch Serv., Inc.*, 842 F.Supp. 770, 775 (D. Del. 1994), *aff'd*, 54 F.3d. 770 (3rd Cir. 1995). A failure to pay may be reasonable if "a diligent investigation" reveals that the claim is not legitimate or "if the seaman fails to provide medical records to support his claim." *Morales*, 829 F.2d at 1360.

Weeks first contends question 12, which asked if Weeks acted unreasonably in failing to pay maintenance and cure, should not have been submitted to the jury. However, any error in the submission of question 12 was waived because Weeks did not object to submission of the question. TEX. R. APP. P. 33.1(a); *Holland v. Wal-Mart Stores Inc.*, 1 S.W.3d 91, 94-95 (Tex. 1999). Weeks

also argues the jury instruction defining aggravation of injury should not have been included in the charge. However, any error in the submission of the instruction is also waived because Weeks's objection at trial and his argument on appeal are different. TEX. R. APP. P. 33.1(a); *Scurlock Permian Corp. v. Brazos Cty.*, 869 S.W.2d 478, 484 (Tex. App.—Houston [1st] Dist. 1993, writ denied)("objection at trial that is not the same as the objection urged on appeal presents nothing for appellate review").

Weeks next contends the evidence is legally insufficient to support the jury's finding that Weeks acted unreasonably in failing to pay maintenance and cure to Garza. Weeks analyzes the evidence under the standard of review utilized in Texas state law cases. Under the Texas legal sufficiency standard of review, we view the evidence in a light most favorable to the finding and indulge every reasonable inference to support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. *Id*. at 827. If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). More than a scintilla of evidence exists "if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)(quoting *Merrill Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706 (Tex. 1997), *cert. denied*, 523 U.S. 1119 (1998)).

Garza, on the other hand, argues the proper standard of review is the federal standard applied in Jones Act cases. The standard of review utilized in federal Jones Act cases vests the jury with complete discretion on factual issues about liability. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d

402, 406 (Tex.), *cert. denied*, 525 U.S. 1017 (1998)(citing *Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 506-07 (1957)). Under the federal standard of review the reviewing court considers the evidence "drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party[.]" *Brown v. Bryan County, OK*, 219 F.3d 450, 456 (5th Cir. 2000), *cert. denied*, 532 U.S. 1007 (2001). The standard is especially deferential with respect to a jury verdict. *Id*. A reversal occurs "only if no reasonable jury could have arrived at the verdict." *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir.1998) (citation omitted), *cert. dism'd*, 526 U.S. 1083 (1999). We need not decide which standard applies because the resolution of the issue is the same under both standards.

It is uncontested that Garza suffered an injury on February 15, 2006, while working for Weeks. Teresa Olivio, Weeks's corporate claims manager, initially authorized treatment for Garza at a local clinic. Olivio testified Weeks accepted that Garza suffered a compression injury caused by another employee. Olivio testified about the investigation process, which included her review of discovery documents, depositions, and medical records. In September 2006, Weeks received medical records from Garza's treating orthopedic surgeon, Dr. Fred Perez, that indicated Garza needed surgery for his neck condition. The medical records also reflect that on four other occasions Garza's doctor remarked about Garza's need for neck surgery, which ultimately took place on October 5, 2007. Olivio testified that although Weeks initially paid for Garza's medical treatment, Weeks stopped paying for medical treatment after Garza was first released to return to work because Garza deserted the vessel and because he had the same neck condition before the accident as he did after the accident. Olivio did not identify who made the decision that Garza's neck condition was the same; she only stated the MRIs from 2004 were the same as the ones from 2006. Dr. Perez

testified the accident caused Garza's prior neck problems to become symptomatic and caused him pain and discomfort. Garza testified he was unable to work after the accident, his supervisor knew he was unable to work, and the supervisor told him to "just go home and take care of yourself." Garza explained he was planning to return to work when he was able to perform his duties.

One reason given by Weeks for its denial of maintenance and cure was its claim Garza deserted the vessel. The duty to provide maintenance and cure is determined by whether the seaman is injured while in service. *See Farrell v. U. S.*, 336 U.S. 511, 515-17 (1949)*; Aguilar*, 318 U.S. at 730. In fact, the obligation to pay maintenance and cure extends even after a seaman is terminated if the injury or illness occurred, was aggravated, or manifested itself while the seaman was in the ship's service. *See Stevens v. McGinnis Inc.*, 82 F.3d 1353, 1359 (6th Cir.)(seaman was fired for employment problems and still entitled to maintenance and cure when illness was inflicted while in service of his ship), *cert. denied*, 519 U.S. 981 (1996); *LeBlanc v. B.G.T. Corp*., 992 F.2d 394, 400 (1st Cir. 1993)(right to maintenance and cure may attach after termination as long as the triggering event takes place within time of winding up of tasks of employment). Here there is no question Garza was injured while in service. Furthermore, Weeks has not cited any case that holds desertion is a reasonable basis for denying maintenance and cure.

Weeks also contends its denial of maintenance and cure was reasonable because there is no evidence Garza suffered an aggravated or additional injury as a result of Weeks's failure to pay maintenance and cure. Weeks confuses the standard for liability with the recovery of damages. Liability is premised on whether a seaman was injured while in service of his ship and the ship-owner acted unreasonably in failing to pay maintenance and cure. *See Morales*, 829 F.2d at 1358. After liability is determined the fact-finder determines whether the denial proximately caused the

seaman an additional injury.[2]  *See Neville v. Am. Barge Line Co.*, 276 F.2d 117, 120 (3rd Cir. 1960)(plaintiff must establish failure to pay was cause of inability to receive treatment); *Smith*, 842 F. Supp. at 775(seaman cannot recover damages for failure to pay maintenance and cure unless there is proof he sustained injury due to the failure); *Waiters*, 923 S.W.2d at 41-42(seaman presented legally sufficient evidence to support compensatory damages of $1,000.00 for ship-owner failure to pay cure).  Weeks did not attack the legal or factual sufficiency of the evidence to support the amount of damages caused by Weeks's failure to pay maintenance and cure.  Any complaint about the jury's award of any amount of damages as a result of the unreasonable failure to pay maintenance and cure is waived.  TEX. R. APP. P. 38.1(f), (i); *Eastin v. Dial*, 288 S.W.3d 491, 501 (Tex. App.—San Antonio 2009, pet. denied); *Gardner v. Gardner*, 229 S.W.3d 747, 756 (Tex. App.—San Antonio 2007, no pet.).

Based on the record before us, we hold there is some evidence about which reasonable minds could differ that supports the jury's finding that Weeks acted unreasonably in failing to pay maintenance and cure.  *See Ford Motor Co.*, 135 S.W.3d at 601; *Ellis*, 971 S.W.2d at 406.  Although Garza may have had similar neck problems in the past, he testified he was no longer able to work after the accident.  Additionally, Weeks was aware of Dr. Perez's medical opinion that the accident on February 15, 2006 aggravated Garza's neck condition, for which Garza required surgery.  In light of this evidence, reasonable minds could differ on whether Weeks acted unreasonably in denying Garza's claim, and a reasonable jury could have found Weeks acted unreasonably.  The evidence is

---

[2] This is also demonstrated by the submission of the issues to the jury.  The jury was asked in question 12 whether Weeks acted unreasonably in failing to pay maintenance and cure.  Question 13 asked what sum of money would fairly compensate Garza for his injuries, *if any*, that resulted from the failure to pay maintenance and cure.

therefore legally sufficient to support the jury's finding that Weeks acted unreasonably in denying Garza's maintenance and cure claim.

### SPECIFIC ORDER EXCEPTION

Weeks challenges the legal sufficiency of the evidence to support the jury's fining that Garza was following a specific order at the time of his accident. Weeks also contends the trial court erred in submitting the specific order question to the jury and the doctrine's application to this case.

In maritime law, comparative negligence bars an injured party from recovering damages sustained as a result of his own fault. *Simeonoff v. Hiner*, 249 F.3d 883, 889-90 (9th Cir. 2001). An exception to the doctrine of comparative negligence exists when a seaman is injured while following a specific order. *Simeonoff*, 249 F.3d at 891. The exception is described as follows:

> Where a general order is given, an employee must use ordinary care in its execution, and the giving of the order does not affect the question whether the servant has been negligent in his manner of carrying it out, *where there is a choice open to him*." [*Jenkins v. Union Pac. R.R. Co.*, 22 F.3d 206, 211 (9th Cir. 1994)] In such cases, the plaintiff's actions are reviewable for contributory negligence. However, when the employee is given a specific order — that is, where he or she is told to perform a specific task in a particular way — "he is not contributorily negligent; rather his conduct falls under the abolished doctrine of assumption of risk." In other words, when a plaintiff has no real choice, his recovery should not be reduced because he performed the task, regardless of whether the plaintiff acted reasonably or unreasonably. But when the plaintiff has reasonable alternatives available to him, he must act reasonably in performing his job. And if he acts unreasonably, he is answerable for contributory negligence.

*Fashauer v. New Jersey Transit Rail Operations, Inc.*, 57 F.3d 1269, 1279 (3rd Cir. 1995)(emphasis in original); *see also Alholm v. Am. S.S. Co.*, 144 F.3d 1172, 1179 (8th Cir. 1998)(when a seaman is ordered to do a task but is not instructed on the method to use and he acts negligently, the

negligence and the availability of a safer alternative may be considered in determining contributory negligence); *Williams v. Brasea, Inc.*, 497 F.2d 67, 73 (5th Cir. 1974)(seaman may not be contributorily negligent for carrying out orders that result in his own injury, even if he recognizes possible danger), *cert. denied*, 423 U.S. 906 (1975); *DuBose v. Matson Navigation Co.*, 403 F.2d 875, 877 (9th Cir. 1968)(contributory negligence doctrine applies when alternative courses of action are available and injured party chooses the unreasonable course.).

On the day of the accident, Garza's supervisor asked him to help adjust the friction lever on the Skadgit, which was adjacent to the TOM JAMES. Garza's supervisor took him to the Skadgit and was teaching Garza how to adjust the friction lever when the supervisor told Garza to go get some tools. Garza testified there was only one route for him to travel to get his tools, which required Garza walk in front of the friction lever. When Garza went to retrieve his tools he was struck on the head by the friction bar. These facts support the application of the specific exception doctrine to this case. *see e.,g. Alholm*, 144 F.3d at 1179 (8th Cir. 1998); *Williams*, 497 F.2d at 73; *DuBose*, 403 F.2d at 877 (9th Cir. 1968).

The charge did not include a definition or instruction to assist the jury in distinguishing between a specific order and a general order.[3] However, applying the distinctions as discussed above, we find there is some evidence about which reasonable minds could differ to support the jury's finding that Garza was acting under a specific order. Garza was not engaged in his ordinary tasks at the time of the accident. Instead he was taken to a different vessel to learn a new job. He

---

[3] Federal court decisions indicate the proper way to assert the specific order exception to contributory negligence is by instructing the jury that if the plaintiff is following orders then he or she cannot be contributorily negligent. *See, e.g.*, *Alholm*, 144 F.3d at 1179; *Jenkins v. Union Pac. R. Co.*, 22 F.3d 206, 212 (9th Cir. 1994).

was following the directions of his supervisor at the time of the accident. Garza did not have a choice in the manner of carrying out the order as the evidence indicates there was only one path for him to take and it put him in front of the friction lever. The evidence is legally sufficient to support the jury's finding that Garza was acting under a specific order at the time he was struck by the friction lever.

In addition to the legal sufficiency challenge to the specific order question, Weeks also argues the trial court erred in submitting the question to the jury because the question did not take into consideration Garza's negligence and breach of care to himself. Weeks claims this was harmful error because the judgment was not reduced due to the twenty percent of fault attributed to Garza's negligence. Although Weeks is correct that the question does not refer to Garza's negligence, his complaint that it was error to submit the question on that basis was not presented to the trial court. Weeks only objection to question 3 was there was no evidence to support the submission and "this is not a case involving the application of the specific order's doctrine." This objection does not preserve any complaint as to form of the question. TEX. R. Civ. P. 174; TEX. R APP. P. 33.1(a); *Barnett v. Koppel North Tex. Dallas Court, LTD*., 123 S.W.3d 804, 820 (Tex. App.—Dallas 2003, pet. denied).

Because the jury found that Garza was following a specific order at the time of the accident and such finding is supported by legally sufficient evidence, the trial court did not err in awarding Garza the full amount of damages found by the jury. *See e.,g. Alholm*, 144 F.3d at 1179 (8th Cir. 1998); *Williams*, 497 F.2d at 73; *DuBose*, 403 F.2d at 877 (9th Cir. 1968).

**FEES AND COSTS**

Weeks's final complaint is the award of attorney's fees and costs should be set aside because the judgment is not significantly less favorable to it than its settlement offer. Section 42.004 of the Texas Civil Practices and Remedies Code provides that if a settlement offer is made and rejected and the judgment is significantly less favorable to the rejecting party, the offering party shall recover litigation costs. TEX. CIV. PRAC. & REM. CODE § 42.004 (Vernon 2008). The statute provides that a judgment is significantly less favorable to the rejecting defendant if the award is more than 120% of the rejected offer. *Id*. The judgment of $3,636,000.00 is more than 120% of the rejected offer of $850,000.00. Therefore, the recovery of litigation costs is proper.

The judgment is affirmed.


Steven C. Hilbig, Justice